UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON


UNITED STATES OF AMERICA

v.                          CRIMINAL ACTION NO. 2:12-00074

DONOVAN MORRIS


O R D E R


        In the two-count Superseding Indictment returned by
the Grand Jury on May 22, 2012, the defendant is charged in
Count One with possession of a firearm as a convicted felon and
in Count Two with possession with intent to distribute cocaine,
both of which are alleged to have occurred on February 29, 2012,
in Charleston, West Virginia.  Both the firearm and the cocaine
were discovered during the course of the execution of two search
warrants issued on that same date for the residence at 1427 4th
Avenue in Charleston.

        This matter is pending on the defendant's Motion to
Suppress, filed on May 23, 2012, in which the defendant seeks to
suppress all items seized pursuant to the execution of those two
search warrants as having been issued without probable cause.
The government filed its response on July 5, 2012, containing a
seven-page statement of facts.  Pursuant to the evidence adduced

1

at the hearing held on August 1, 2012, and the stipulation and agreement of the parties at that hearing to the statement of facts set forth in the government's response at pages 1 through 7, which stipulation the court accepts, adopts and states as part of its findings of fact herein, the court finds by a preponderance of the evidence as follows.

## I.   Facts As Stipulated

At or about 9:30 p.m. on Monday, February 27, 2012, a Kanawha County 911 dispatcher received a phone call from an individual who identified himself only as "Gabriel" who stated that he had been shot in the head and was bleeding.  This shooting occurred at a residence at 1454 4th Avenue, on the West Side of Charleston, Kanawha County, West Virginia.  The victim stated that he did not know who shot him.

Patrol officers arriving on the scene saw an unknown black male wearing jeans and a white t-shirt run out of the back of the residence.  Charleston Police Department ("CPD") Corporal VanHorn chased the fleeing suspect for several blocks but lost sight of him.

CPD Detectives J. F. Taylor and W. Daniels arrived and entered the residence to secure it.  They saw a revolver on a couch on the first floor.  The revolver had a partially exploded potato taped to the end of the barrel.

In another room on the first floor Detective Taylor saw various cleaning supplies and rope, along with several plastic Family Dollar shopping bags.

Upstairs, Detectives Taylor and Daniels entered a bedroom where a large amount of blood and pieces of potato were on the floor.  Officers also saw in this bedroom a quantity of white powder (later determined to weigh 143 grams), zip lock sandwich bags, and a digital scale.

A search warrant for the residence at 1454 4th Avenue was obtained from a Kanawha County Magistrate and, at about 11:40 p.m., executed.  A satchel lying near the pool of blood was searched by Detective Taylor, who found several freezer bags containing U.S. currency (later determined to be $69,440).

Detectives Taylor and Daniels attempted to interview the shooting victim, Gabriel Gonzales, who was in the intensive care unit at Charleston Area Medical Center, General Division. Gonzales had been shot twice in the head; neither projectile

penetrated his skull.  Gonzales provided no information regarding who shot him.

CPD Detective Eric Tipton participated in the search. In the living room of the residence he saw the cleaning supplies, some of which were Family Dollar brands.  The items Detective Tipton saw were three bottles of Clorox Fresh Meadows bleach, three cans of Love My Carpet carpet powder, one bottle of Febreeze fabric refresher, clothesline rope and vinyl gloves.

On February 28, 2012, Detective Tipton went to the Family Dollar store at 1536 Washington Street, West, in Charleston, West Virginia, the Family Dollar store closest to the residence where Gonzales had been shot.  Store personnel were able to provide Detective Tipton with a video from 3:49 p.m. on Sunday, February 26, 2012, showing a person (later determined to be Donovan Morris) buying all of the cleaning items Detective Tipton had seen at the residence, plus 2 lint rollers.  The buyer paid in cash.  A Family Dollar loss prevention manager was able to locate the "transaction history" for the transaction, which listed all of the cleaning items Detective Tipton had seen at the residence, plus 2 lint rollers. The clerk who sold the items to Morris told Detective Tipton that he thought that the purchaser was trying to get rid of something and that he thought that it was very suspicious.

Detective Tipton showed the video to other CPD officers, and one, Detective E. Smith, identified the buyer as defendant Donovan Morris.  Detective Smith obtained a booking photograph of Morris from a previous arrest, and Detective Tipton obtained a photo of Morris from the West Virginia Division of Motor Vehicles.  This record contained the address of Defendant Morris' residence:  1427 4th Avenue, Charleston, West Virginia, across the street and a few doors away from the residence where Gonzales was shot.

These photographs were compared with the video, and Detective Tipton decided that the buyer in the video was Donovan Morris.

On February 29, 2012, a search warrant was obtained from a Kanawha County Magistrate for Morris' residence at 1427 4th Avenue, Charleston, West Virginia, only a few hundred feet from the scene of the shooting.  Detective Tipton applied for this search warrant.  He completed and signed under oath a form entitled "Affidavit and Complaint for Search Warrant," incorporating by reference an affidavit labeled "Exhibit A." The Affidavit and Complaint for Search Warrant alleged that Morris had committed attempted first and second degree murder in violation of W. Va. Code § 61-2-1; alleged that certain property

believed to be at 1427 4th Avenue was, among other things,

evidence of a crime; and described the property to be seized, as

follows:

> The clothing worn by the suspect (see
> Exhibit B) while purchasing several items
> that were recovered from the scene of the
> attempted homicide, and the receipt for the
> purchased items.  The clothing was observed
> being worn by the suspect in surveillance
> footage of the suspect purchasing the items
> prior to the attempted homicide.  Any
> communications devices or electronic
> equipment that can be used to conspire,
> research, or store data related to the crime
> of murder, as well as the contents and
> information stored in such devices.

Exhibit B attached to the Affidavit and Complaint for

Search Warrant is a still shot taken from the Family Dollar

video, showing the clothing worn by Morris.  The Affidavit and

Complaint for Search Warrant was signed by the Magistrate.

The Magistrate issued the requested search warrant and

authorized the search for and the seizure of the clothing

Donovan Morris was wearing in the Family Dollar video and any

receipt from that purchase, as well as communication devices and

electronic equipment.

On February 29, 2012, Detective Tipton and other

officers went to Morris' residence at 1427 4th Avenue to execute

the search warrant.  Upon his arrival, Detective Tipton saw two

women on the front porch, one of whom he identified as Kimberly Sayles, Morris' mother. Detective Tipton asked Sayles if Morris was home, and Mrs. Sayles replied that he was not and that she thought he was at his girlfriend's apartment at 877 Westminster Way.

Detective Tipton then asked Mrs. Sayles which bedroom belonged to Morris, and Mrs. Sayles told Detective Tipton that if he went up the stairs and followed the hallway to the end, the last bedroom on the left was Donovan Morris' room.

Detective Tipton asked Mrs. Sayles when the last time her son was home, and Mrs. Sayles told Detective Tipton that Morris had been home on Sunday, February 26, and Monday, February 27, 2012.

Detective Tipton and other officers entered the house and went to the room Mrs. Sayles had identified as her son's bedroom. The room appeared neat and in order. Detective Tipton saw several hats placed neatly on the top shelf of the closet. The top hat was a Baltimore Orioles hat, orange and black, with stickers on the bill, which Detective Tipton recognized as the hat Morris was wearing in the Family Dollar video.

Another officer, Detective J. Webb, located a white t-shirt with a yellow sunset over a mountain printed on it. Detective Tipton recognized it as the t-shirt Morris was wearing in the Family Dollar video.  Officers also located in the room Morris' driver's license and Federal corrections ID, digital scales, and two Family Dollar brand lint rollers (the only items Morris purchased from the Family Dollar that were not found at the residence where Gonzales was shot.)

While searching the room, detectives noticed that the drop ceiling in the room above the bed was out of place and appeared to have been moved recently.  Detectives moved the tile and looked up into the ceiling.  A safe was located in the ceiling and sitting next to the safe was a semi-automatic pistol.  Once the pistol was found, Detective J. Taylor left to get a second search warrant for the residence, one that would authorize them to search for and seize firearms, ammunition, and drug paraphernalia.  Detective Taylor obtained and executed that search warrant the same day from a Kanawha County Magistrate.

In the meantime, Detective Tipton spoke to Mrs. Sayles and asked her if she was aware of anything in her residence that should not be there.  Mrs. Sayles told Detective Tipton that she thought her husband had a firearm in the house somewhere but was not sure where he kept it.

8

After the second search warrant was obtained, officers continued to search Morris' bedroom.  Detective Tipton located a plastic sandwich bag in the closet containing a white powder (later determined to weigh 224 grams), which was seized.

Investigators also seized the firearm they had seen earlier, a Kahr 9 mm semi-automatic, together with ammunition. The handgun contained a magazine loaded with live 9 mm ammunition.

## II.  Additional Facts

The defendant was known to the Charleston Police Department by virtue of past criminal activities.  CPD Detectives E. Smith and Cpl. Basford, who knew him, identified the defendant as the purchaser who is depicted in the color surveillance video at the cashier's counter at the nearby Family Dollar store at 3:49 p.m. on February 26, 2012, being the day before the attempted murder of Gabriel Gonzales.  The following items were purchased on that occasion:  three bottles of Clorox Fresh Meadows bleach, three cans of carpet powder with the brand name Love My Carpet, one bottle of Febreeze fabric refresher, two packs of vinyl gloves, two packages of 100 foot clothesline and two lint rollers.  Items of that same description and in

those same quantities except for the two lint rollers were found at the scene of the attempted murder.[1]

The detectives learned that the defendant's residence was located at 1427 4th Avenue, being in the same block as the residence where the attempted murder had taken place.  The color video from the Family Dollar store, which is located only some five blocks from the 1400 block of 4th Avenue, indicated the purchaser was a black male wearing a dark ball cap with an orange logo, as well as what appeared to be a partially exposed white t-shirt that was being worn under an open jacket.  On the shirt could be seen a logo at chest level that was yellow in the center top and immediately below which there appears to be a broader green or bluish-gray base.

It was apparent that a more positive identification of the defendant, as the one who had made the cash purchase at Family Dollar, could be obtained if the two articles of clothing just noted were found in his possession, along with the receipt from the purchase.  Those items, if found in his possession, would constitute further evidence that it was the defendant who was the purchaser shown in the video at the Family Dollar store and who may have had a role in the attempted murder of Gonzales.

---

[1]Detective Tipton's Affidavit to obtain the first search warrant for 1424 4th Avenue mistakenly stated that the two lint rollers were found at 1454 4th Avenue.  He acknowledged at the hearing that the mistake occurred due to the pace of the investigation.  The lint rollers were found in a drawer in the bedroom at 1427 4th Avenue.

The essence of the foregoing factual statement is found in the Affidavit of Detective Tipton that was presented to the Magistrate in support of the issuance of the search warrant seeking:

> [T]he clothing worn by the suspect (see Exhibit B) [depicting the purchaser at the counter of the Family Dollar store] while purchasing several items that were recovered from the scene of the attempted homicide, and the receipt for the purchased items.

It also sought electronic communication devices.  As noted, Detective Smith and Corporal Basford identified that suspect as the defendant, for whom Detective Smith had obtained a booking photograph from a previous arrest.  Detective Tipton had obtained a photo of the defendant from the West Virginia Division of Motor Vehicles, containing the address of defendant's residence as 1427 4th Avenue, Charleston, West Virginia.  The factual information so obtained supports the statement in Detective Tipton's Affidavit for the first search warrant for 1427 4th Avenue as follows:

> Once the subject who purchased the items from the above store was identified by Detective E. Smith and Cpl. R. Basford it was determined that his residence is located at 1427 4th Avenue which is across the street from the scene of the shooting.

Once inside the bedroom at 1427 4th Avenue, the officers found in the closet on a hanger a white t-shirt with a logo at chest level depicting a multi-green mountain scene topped by a slightly off-center yellow sun-like impression and, on the shelf of the closet, an orange and black Baltimore Orioles baseball cap.  The officers also noted that the ceiling tile was slightly out of place and, upon probing above it, saw in plain view a semi-automatic pistol.  As set forth in the Affidavit of Detective J. F. Taylor that accompanied the Complaint for the second search warrant for 1427 4th Avenue, the detectives found during the first search, "sandwich bags, digital scale, including an electronic device to detect if a person is emitting any type of digital or video transmission." Only the bedroom was searched.

The officers then sought a second search warrant for 1427 4th Avenue inasmuch as it was known that the defendant was a convicted felon apparently in possession of the pistol seen above the ceiling.  The Affidavit for that search warrant listed as evidence of a crime the following:  firearms, ammunition, digital scales, packaging materials, . . . and any and all other items association (sic) with the above crime [convicted felon in possession of a firearm], including narcotics." Upon execution of the search warrant later that afternoon on February 29, 2012,

the officers seized the various items shown on the single property receipt which first lists the properties seized at 1427 4th Avenue during the first search and then lists the properties seized during the second search. For the initial search, the items seized included:

        1 - black/orange baseball cap (Orioles)
        2 - lint rollers (Family Dollar)
        1 - white t-shirt
        1 - pair rubber gloves (blue)

For the second search warrant, the items seized included:

        1 - KAHR PM9 Semi Automatic Pistol VA4931
        1 - large bag containing suspected cocaine
          white powder
        1 - set of scales
        1 - bag w/ 1-100 ct. Remington 40 cal ammo
          box w-ammo approx. 100 40 cal rounds
        1 - bug sweeper (detection device)

### III.  Validity of the Search Warrants

The defendant attacks the validity of the search warrants essentially on the ground that the initial search warrant for 1427 4th Avenue did not seek evidence of a crime and on the further ground that the officers did not have an adequate basis for determining that the defendant maintains a residence at 1427 4th Avenue.

A.

"Probable cause exists when 'there is a fair
probability that contraband or evidence of a crime will be found
in a particular place.'  Because the probable-cause requirement
looks to whether evidence will be found when the search is
conducted, all warrants are, in a sense, 'anticipatory.'"
<u>United States v. Grubbs</u>, 547 U.S. 90, 95 (2006) (citation
omitted) (<u>Illinois v. Gates</u>, 462 U.S. 213, 238 (1983)).  In
further elaborating on the practical application of the
standard, our court of appeals has observed as follows:

> "The critical element in a reasonable search is not
> that the owner of the property is suspected of crime
> but that there is reasonable cause to believe that the
> specific 'things' to be searched for and seized are
> located on the property to which entry is sought."
> <u>Zurcher v. Stanford Daily</u>, 436 U.S. 547, 556, 98 S.
> Ct. 1970, 56 L.Ed.2d 525 (1978).  Accordingly,
> "<u>residential searches have been upheld only where some</u>
> <u>information links the criminal activity to the</u>
> <u>defendant's residence</u>." <u>United States v. Lalor</u>, 996
> F.2d 1578, 1583 (4th Cir. 1993).

<u>United States v. Doyle</u>, 650 F.3d 460, 471 (4th Cir.
2011)(emphasis added).

The initial search warrant sought to find distinctive
clothing that would solidify the identification of the defendant
as the purchaser at the Family Dollar store who there obtained
the very same kind of cleaning supplies, clothesline cord, vinyl

gloves and Family Dollar carry-out bags as those found the next day at the scene of the attempted murder of Gonzales.  The purpose of the first search warrant was to identify the defendant as one who may have committed the attempted murder. While the clothing was not itself evidence of a crime, the possession of it by the defendant would tend to link him to the attempted murder of Gonzales.  It thus formed a legitimate basis for the issuance of the initial search warrant.

B.

With respect to the determination by the officers of the defendant's residence address, the defendant may be asserting that it was unreasonable for law enforcement to rely upon the accuracy of the address obtained from the Division of Motor Vehicles. Yet, law enforcement quite simply had no reason to question the reliability of that locating information. Licensed West Virginia drivers are obliged, by statute, case law, and regulation, to regularly update their address information with West Virginia's central vehicular licensing authority.

West Virginia Code section 17B-2-13(a) provides materially as follows:

> Whenever any person after applying for or
> receiving a driver's license moves from the
> address named in the application or in the
> license issued to the person . . . the
> person shall within twenty days thereafter
> notify the division in writing of the old
> and new addresses or of the former and new
> names and of the number of any license then
> held by the person on the forms prescribed
> by the division.

W. Va. Code, § 17B-2-13(a); see also State ex rel. Miller v.
Reed, 203 W.Va. 673, 681, 510 S.E.2d 507, 515 (1998) ("[W]e hold
today that pursuant to the provisions of West Virginia Code §
17B-2-13 (1996), an individual who holds a driver's license
issued by the West Virginia Division of Motor Vehicles is
required to notify the Division in writing concerning a change
of address within twenty (20) days after a change of residence
on the prescribed form.").

From a regulatory standpoint, title 91 West Virginia
Code of State Rules section 91-4-9.1 provides similarly as
follows:

> 9.1. Change of Address. -- In accordance
> with law, all licensees shall provide the
> Division with a correct address within
> twenty days of moving to a new location
> . . . If the licensee chooses to obtain a
> new driver's license, he or she shall
> present at least one proof of identity and
> one proof of residency as described in
> Sections 10 and 11 of this rule.

__Id.__   There is case law indicating the reliability of such records, with the same type of corroboration found here, in a Fourth Amendment context.   __Cf.__ __United States v. Martinez-Garcia__, 397 F.3d 1205, 1216 (9th Cir. 2005) (in noting a __Franks__ hearing was unnecessary, the court of appeals observed that "[l]aw enforcement officers acting in reasonable reliance on tips from a reliable informant, corroboration through police observation and official driving records [reflecting a target's address] need not track down every piece of information that might potentially be relevant before filing a warrant affidavit.").

The court accordingly finds probable cause for the issuance of the first search warrant for the residence at 1427 4th Avenue, Charleston, West Virginia, on February 29, 2012. Based on the pistol, sandwich bags, digital scales and electronic detector found in plain view, the court similarly finds probable cause for the second search warrant for the same residence.

IV.   Good Faith

Even if it could be said that the initial search warrant for 1427 4th Avenue was in any respect invalid, the evidence obtained from the two searches is nonetheless

17

admissible under the good faith rule of <u>Leon</u>.  <u>United States v.</u>
<u>Leon</u>, 468 U.S. 897 (1984).

Detective Tipton's Affidavit in support of the
Complaint that sought the initial search warrant set forth the
specific facts that fully justified the issuance of that search
warrant by the Magistrate.  His factual statement in the
Affidavit was an accurate one except for the minor,
insignificant mistake of stating that the two lint rollers were
found at the scene of the Gonzales shooting.  In turn, the
reliance on the search warrant by the officers executing it was
objectively reasonable.

Applying the four cautions emphasized in <u>Leon</u>, (1)
Detective Tipton did not include any material information in the
Affidavit that he knew was false or would have known was false
except for reckless disregard for the truth, nor was the
Magistrate misled by any of the information in the Affidavit;
(2) the Magistrate did not in any sense abandon his neutral,
judicial role in issuing the initial search warrant; (3) the
Affidavit was not lacking in indicia of probable cause and thus
did not "render official belief in its existence entirely
unreasonable"; and (4) neither was the warrant "so facially

deficient . . . that the executing officers [could] not reasonably presume it to be valid." <u>Id.</u> at 923.

In view of the totality of the circumstances, the Magistrate was entitled to rely on the Affidavit of Detective Tipton in issuing the initial search warrant for 1427 4th Avenue; and the police officers executing that warrant acted with objective reasonableness in relying on the warrant itself.  The second search warrant for the same address on the same day followed as a matter of course, based on the pistol and other items seen by the officers in plain view while executing the initial search warrant.

### V.  Conclusion

The court concludes that neither search violated the Fourth Amendment.  The motion to suppress is denied.

The Clerk is directed to forward copies of this written opinion and order to the defendant and all counsel of record.

DATED:  August 13, 2012

John T. Copenhaver, Jr.
United States District Judge